# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

### UNITED STATES *v.* ROGERS.

*(District Court, N. D. Illinois.* February 9, 1891.)

1. **FEDERAL COURTS—CRIMINAL JURISDICTION—GREAT LAKES.**
   Under Act Cong. Sept. 4, 1890, extending the criminal jurisdiction of the federal courts to offenses committed upon any vessel registered or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes," "or any of the waters connecting any of the said lakes," such courts have no jurisdiction of a larceny committed upon a steam-barge while lying in the Menominee river, a tributary of Lake Michigan, half a mile from its mouth.

2. **SAME—BRINGING STOLEN PROPERTY WITHIN THE JURISDICTION.**
   The United States courts have no common-law jurisdiction in criminal matters, and can only take such jurisdiction as is given them by statute; and the fact that, though the larceny was committed within the limits of a state, the stolen property was not discovered in defendant's possession until the vessel was upon Lake Michigan, will not aid their jurisdiction.

At Law. Indictment for larceny.

*Thomas E. Milchrist,* U. S. Dist. Atty.

*Jesse A. Baldwin,* for defendant.

BLODGETT, J. The defendant was indicted at the late session of the grand jury of this court, charging that, while on board a certain vessel, called the "S. K. Martin," the same being a vessel enrolled under the laws of the United States, and being on a voyage upon the waters of Lake Michigan, the said vessel being then in the waters of the Menominee river, one of the tributaries of Lake Michigan, and within the jurisdiction of this court, the defendant did feloniously take, steal, and carry away a large number of gold coins, to-wit, 10 gold coins of the denomination and value of $10 each, and 10 gold coins of the denomination and value of $5 each, the same being then and there the property of one William H. Evans. A plea of "not guilty" was entered, and upon a trial before a jury a verdict of guilty was rendered. Thereupon a motion in arrest of judgment was made in behalf of defendant. This motion is based upon the ground that the indict-

v.46F.no.1—1

ment upon its face shows that the offense was not committed within the jurisdiction of this court, as it is insisted that the Menominee river is no part of Lake Michigan. The indictment was intended to bring the case within the provisions of the act of September 4, 1890, entitled "An act extending the criminal jurisdiction of the circuit and district courts to the Great Lakes and their connecting waters," (see Acts 1st Sess. 51st Cong. p. 424,) which provides:

"Section 1. That every person who shall upon any vessel registered or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, namely, Lake Superior, Lake Michigan, Lake Huron, Lake St. Clair, Lake Erie, Lake Ontario, or any of the waters connecting any of the said lakes, commit or be guilty of any of the acts, neglects, or omissions respectively mentioned in chapter 3, tit. 70, of the Revised Statutes of the United States, shall, upon conviction thereof, be punished with the same punishment in the said title and chapter respectively affixed to the same offense there mentioned respectively. Sec. 2. That the circuit and district courts of the United States, respectively, are hereby vested with the same jurisdiction in respect to all the offenses mentioned in the first section of this act that they by law have and possess in respect to the offenses in the said chapter and title in the first section of this act mentioned; and said courts respectively are, for the purposes of this act, vested with all and the same jurisdiction they respectively have by force of title 13, c. 7, of the Revised Statutes of the United States."

Upon the trial before the jury the testimony showed the facts substantially as stated in the indictment,—that is, that the defendant was employed as cook on the steam barge or vessel S. K. Martin, which was a vessel duly enrolled and licensed for the coasting trade, and while said vessel was lying in the Menominee river, about half a mile above its mouth or entrance into Lake Michigan, taking on a cargo of lumber to be transported from said point to the city of Chicago by means of a voyage in the waters of Lake Michigan, the larceny charged was committed by breaking into the captain's office on said steamer, and stealing therefrom the money described in the indictment; that, after the vessel had left the Menominee river and was proceeding on her voyage upon the waters of Lake Michigan to the port of Chicago, the defendant was suspected of the crime, and, on being charged with guilt by the captain, he told the captain where he had concealed a part of the money, and the same was found in the place of concealment he had indicated. So that both by the terms of the indictment and the proof on the trial, the facts appear that the office was broken into and the money taken therefrom while the vessel was lying in the Menominee river. The act of congress quoted only gives the United States circuit and district courts jurisdiction of the crime of larceny (punishable under section 5356) when committed on board a vessel enrolled or registered under the laws of the United States while on a voyage upon the waters of any of the Great Lakes or the waters connecting any of said lakes. The vessel upon which this larceny was committed was not at the time of said larceny on a voyage on any of the Great Lakes or the waters connecting any of said lakes, but she was lying in the waters of the Menominee river. This river does not connect any of the Great Lakes, but, as the

indictment states, is a tributary of Lake Michigan,—that is, it does not connect Lake Michigan with any of the other lakes, but simply empties its waters into Lake Michigan; and, as the river forms the boundary between the states of Michigan and Wisconsin for many miles up from its mouth, the offense was committed in either the state of Michigan or Wisconsin, according to the side of the river on which the vessel was lying at the time the stealing was done. It matters not that the vessel was lying within a half mile of the mouth of the river; so long as she was in the river,—that is, between the banks,—she was within the body of a state and county, and not upon the waters of Lake Michigan, and the United States courts have no jurisdiction of the crime. It is urged, however, that as part of the stolen money was found in defendant's control under such circumstances that he may be said to have had possession of it, because it was concealed in a place on the vessel where he had placed it, and no one else seems to have known of its place of concealment, therefore he may be said to have had the stolen property upon the waters of Lake Michigan; and that this court, therefore, has jurisdiction. The authorities in the state courts of this country and in England are in the main to the effect that personal property stolen in one county, and carried into another county, and found there in possession of the thief, will give the courts of the county where the goods are found the same jurisdiction to try and punish the offender as is given to the authorities of the county where the original crime is perpetrated. 2 Archb. Crim. Pr. (8th Ed.) p. 1141; 1 Bish. Crim. Law, § 136 *et seq.; Myers* v. *People*, 26 Ill. 176; *Stinson* v. *People*, 43 Ill. 400. But the United States courts have no common-law jurisdiction in criminal matters, and can only take such jurisdiction as is given them by statutes. *U. S.* v. *Worrall*, 2 Dall. 384; *U. S.* v. *Hudson*, 7 Cranch, 32; *U. S.* v. *Coolidge*, 1 Wheat. 415; *U. S.* v. *Britton*, 108 U. S. 193, 2 Sup. Ct. Rep. 526. It having been decided that the United States had no jurisdiction over crimes committed upon the waters of the Great Lakes, (*Ex parte Byers*, 32 Fed. Rep. 404,) congress in September last passed the law just quoted, to confer jurisdiction; and jurisdiction can only be taken under that act, and to the extent there granted. The jurisdiction taken by common-law courts in cases of constructive larceny makes the possession of the stolen goods elsewhere than in the jurisdiction where the crime of actual larceny was committed in respect to said goods a felonious possession as against the law of the place where he has such possession, but that rule does not apply to courts that have no common-law jurisdiction. To hold that this court has jurisdiction to try this defendant because of the fact that he had in his possession, on board of an enrolled vessel, while on a voyage upon the waters of the Great Lakes, property which had been stolen in the Menominee river, would be in effect to hold that any person who takes his passage upon an enrolled vessel for a voyage, either long or short, on the Great Lakes, can be indicted and tried in the United States circuit or district courts if he has with him on such vessel property he has stolen elsewhere. But a more conclusive reason in this particular case in answer to this position on the part of

the prosecution is that the indictment itself is defective in showing that the crime was committed in a place over which this court had no jurisdiction, and the prosecution on the trial should have been limited to proof of the offense in the place alleged. The motion in arrest of judgment is sustained, and an order will be entered quashing the indictment for want of jurisdiction, and discharging the prisoner.