# TIMOTHY FITZMAURICE v. JOHN TURNEY et al.; JOHN TURNEY, Appellant.

**Division One, November 25, 1908.**

1. **PRIVATE ROAD: Way of Necessity: Reserved in Deed: Pleading.** A petition for a private roadway, charging it to be a road of necessity, does not fail to state a cause of action for that it states that a private roadway was reserved in the deed of one of the defendants for plaintiff's and the defendants' use along a certain forty acres, if that reservation does not begin at plaintiff's land and ends before it reaches the lands of the complaining defendant.

2. ————: ————: **Defect in Petition: Shown by Evidence.** A defect in the petition contended to be fatal to the jurisdiction of the court, cannot be predicated upon what the evidence shows.

3. ————: **Notice: On Railroad Company: Publication.** Under the statute requiring that notice be given of the presentation of a petition for a private road and that if the owner of the land does not reside in the county the notice shall be given by publication, the notice to a foreign corporation which has a railroad running through the county, and a depot place of business, and an agent in charge thereof, need not be given by publication, but may be served by the sheriff on the agent. The railroad company in such case is a resident of the county.

4. ————: **Former Suit: No Evidence.** The filing of a motion to dismiss the proceeding for a private road, on the ground that a like suit had previously been brought and determined, does not prove that such suit was brought or determined. Such motion does not prove itself; and even if its allegations are proved in the county court, they must be proved again in the circuit court. They can be proved only by the records of such proceedings, and if those were not offered in evidence in the circuit court, or if offered are not preserved in the abstract, the motion cannot on appeal be sustained.

5. ————: **Payment of Damages.** · Where the judgment of the county court establishing the private road also contains an order directing petitioner to pay the awards of damages into the county treasury for the respective defendants, it complies with the statute, and is not to be set aside on appeal to the circuit court on the ground that the damages assessed were not paid before the judgment was rendered. That part of it establishing the road could not be enforced until payment was made.

6. ———: **Judgment: Not Describing Land.** Where the petition described the road, and the commissioners in their report described it as the petition did, and the decree of the court so recites, and "ordered and adjudged that the said way be and the same is hereby established according to the report of the commissioners in this cause, to-wit," the clerk ought to have copied the description of the road into the judgment, but the judgment is not void, because it can be corrected by *nunc pro tunc* entries.

7. ———: **Appeal by One Defendant.** Because some of the defendants did not appeal, one defendant cannot nullify the whole proceedings establishing a private road by taking an appeal, whether the damages to the other defendants were or were not paid.

8. ———: **Of Necessity: Question of Fact.** Whether or not the proposed private road was one of necessity is a question of fact, and where there is evidence pro and con and the trial court sitting as a jury found that it was one of necessity the appellate court will not interfere with that finding.

9. **EVIDENCE: Contents of Deed.** The contents of a deed not shown to be lost or out of reach of the party, cannot be proven by oral evidence.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*T. C. Dungan* and *John W. Stokes* for appellant.

(1)   The petitioner's application for the private way is insufficient and does not contain a statement of facts authorizing the court to exercise jurisdiction. It shows upon its face that the object of petitioner was to increase and enhance the value of the petitioner's lands; that said way was not a private way of necessity, as petitioner already had a private way reserved for himself by deed, to himself and other persons, children of Patrick Fitzmaurice, and their grantees and assigns forever.   A way of strict necessity must not only be alleged, but it must be proven. Colville v. Judy, 73 Mo. 621; Cox v. Tipton, 18 Mo.

App. 450; Barr v. Flynn, 20 Mo. App. 383. It also appears from the statements and admission that a part of defendant Turney's land formerly belonged to Patrick Fitzmaurice, and that he sold same to said Turney, reserving a right of way across it to this same public road, but that the deed misdescribed the location of the said reserved roadway across same, so that it appears petitioner has a reserved right of way over the same forty acres of Turney mentioned in his petition. Cox v. Tipton, supra. These proceedings, *in invitum*, against common law and common right, have always been strictly construed. Ells v. Railroad, 51 Mo. 200; Jefferson Co. v. Cowan, 54 Mo. 234; Railroad v. Campbell, 62 Mo. 585; Coberly v. Butler, 63 Mo. 556. The way sought is not a public way but is a private one of convenience, but not a way of strict necessity, at all, as shown by the application as well as by the record and the proof in the case. (2) The private road sought was over the lands of three separate and different landowners, requiring proper notice to each and all of such landowners, and until all were legally and properly notified, neither the county court, nor the circuit court on appeal, could render any judgment establishing such road or even appoint commissioners to assess damages. Humes v. Railroad, 82 Mo. 226; Hall v. Pettit (Mich.), 50 N. W. 117. The railroad company, being a foreign corporation and not a resident of Holt county, could be notified and brought into court by publication as provided in section 9460, Revised Statutes 1899, and any steps taken or judgment rendered were *coram non judice* and void. Hall v. Pettit, supra; Dick v. Tennison, 27 Mo. 373; Railroad v. Young, 96 Mo. 42. The law empowering tribunals to establish private ways of necessity is *strictissimi juris*. Everything required to be done must be done. Colville v. Judy, supra; Morris v. Sallie (Ky.), 19 S. W. 527. (3) The court had no

jurisdiction to render any judgment whatever against any of the defendants unless and until they were all duly notified, the damages of each and all ascertained and assessed, and the full amount thereof paid into the county treasury for each and all of them.    This is a proceeding in entirety, if void as to one it is void as to all.    Colville v. Judy, 73 Mo. 651; Anderson v. Pemberton, 89 Mo. 61.    (4) The judgment was erroneous in that it did not specify and describe the private right of way sought to be established, either specifically or by reference to the petition, commissioners' report or other proceedings of record.

*G. W. Murphy* and *C. F. Booher* for respondent.

(1) The Chicago, Burlington & Quincy Railroad Company make no objection and have accepted their damages.    This appellant cannot be heard to make such an objection in behalf of the railroad company when the company does not object.    (2) For the purpose of bringing action, the residence of a railroad corporation is in any county through which its lines of road passes, and in which it has an agent upon whom process can be served.    Railroad v. Nelson, 193 Mo. 297.    A railroad which runs through a county and has been sued therein by service of process on its local agent is a resident of such county within the meaning of the law.    Crustinger v. Railroad, 82 Mo. 64; Young v. Niles & Scott Co., 122 Mo. App. 399.    (3) The report of the commissioners is not a judgment and does not limit the petitioner's right to dismiss, and to bring his suit anew.    It is only when the application has been contested and the commissioners have reported and their report has been confirmed and it is adjudged that the petitioner has complied with the statutory requirements that the judgment is final, and likewise where the court has confirmed the commissioners' report, the judgment is fi-

nal.   1 Black on Judgments, art. 40; Gibson v. Railroad, 40 Mo. App. 146; Gray v. Railroad, 81 Mo. 126; State ex rel. v. Fort, 180 Mo. 97.   But in the case of a private road under the statute new commissioners can only be appointed in case the proceedings are irregular (sec. 9463), and in the nature of the case this matter could not well be raised by the petitioner; and would not be raised by the defendants when the damages were excessive, as in the case of John Turney.   The only persons who can appeal in any way or object to the report of the commissioners are those through whose land the road passes.   Sec. 9464.   Therefore, no appeal lies in favor of petitioner, and in case of erroneous assessment his only remedy is in dismissing his proceeding.   Otherwise he is without relief of any kind.   (4) Petitioner was entitled to a statutory private road, if he was inclosed and no public road lead through or touched his land. That he might have had a partial way by private grant or easement, is not sufficient, especially when this did not give a practicable roadway, but only lead to an impassable stream over which it became necessary to construct a large bridge, and when there was no provision made for building or keeping up the bridge. The roadway spoken of by appellant was not such a one as the law contemplates.   (5) Where the viewers of a private road were required by statute to report whether the same was "necessary," their report that there was "occasion" for the establishment of the road was sufficient.   In re Polpson, 16 Pa. (4 Harris) 15. A private way laid out under the statute should be pleaded as a highway.   A way laid out by selectmen for the accommodation of an individual, although subject to gates and bars, is still a public way.   Metcalf v. Binghen, 3 N. H. 459; Proctor v. Anderson, 42 N. H. 348; Brown v. Brown, 50 N. H. 538.   (6) Where a proceeding to acquire a "cart way" alleges that

the plaintiff has no other way out, evidence that the way prayed for is shorter than others proposed is admissible to show the demand is reasonable. Warlick v. Lawrence, 10 S. E. 474. (7) A person has a right to have a private road established over the lands of his neighbor, though he may have access to the highway over his own lands, if such route be especially difficult or burdensome. Mayo v. Thigpen, 11 S. E. 1052; Railroad v. Coal & Min. Co., 161 Mo. 317; Reynolds v. Reynolds, 15 Conn. 83.

VALLIANT, P. J.—This suit was begun in the county court of Holt county to establish a private road across certain lands in that county belonging respectively to the three defendants John Turney, John Fitzmaurice and the Chicago, Burlington and Quincy Railroad Company. The cause was carried by appeal to the circuit court of that county, where final judgment was rendered in favor of the petitioner and against the three defendants, from which judgment one of the defendants, John Turney, alone has appealed. There is no question raised as to the amount of the damages awarded, but the judgment establishing the private road is assailed on several grounds.

Section 9460, Revised Statutes 1899, Mo. Ann. Stat. p. 4345, provides that a petitioner in such case must at least ten days before the petition is presented to the county court cause a copy of the petition to be served on the defendants and a notice of the day on which the petition is to be presented to the county court. The record shows that the petitioner did cause a copy of the petition and notice that it would be presented to the county court on December 6, 1901, to be served on each of the defendants John Turney and John Fitzmaurice September 26, 1904, and on November 26, 1904, on Vine Hovey, the agent and officer of the C. B. & Q. R. R. Co. in charge of its depot and

place of business in Forest City in Holt county, the president or other officer not found in that county, the railroad company being a corporation organized under the laws of another State and doing business in this State.

The petition was presented to the county court December 6, 1904, being a day of the November term of that court. It stated that the plaintiff was the owner of two hundred and thirteen and two-thirds acres of land, describing it, in Holt county; that no public road passed through or touched it and that there was no established roadway connecting it with any public road, which fact greatly depreciated its value and impaired its usefulness; that in order to render the land of value and use, for farming or other purposes, it was necessary to establish the private road asked for in the petition; that the road sought to be established was a private way of necessity and would connect the petitioner's land with a certain public road in the county at a convenient point; then the petition sets out by metes and bounds the proposed road twenty feet wide in a straight line across the land of defendant John Fitzmaurice, across the railroad right of way and across the land of defendant John Turney, the appellant. The petition also states "that there is a strip one rod wide across the north side of the said east half of the aforementioned tract belonging to John Fitzmaurice which has been reserved by the grantors of said lands (Patrick Fitzmaurice and wife) to John Fitzmaurice, which reservation is for roadway for use of this petitioner and others." The prayer of the petitioner was for the appointment of three disinterested commissioners "to view the premises and mark out a roadway as herein prayed as a private way of necessity, assessing, as the law provides, to the owners of the land through which the said proposed road may run and in duty bound," etc.

On the presentation of the petition to the county court, December 6th, 1904, defendants John Fitzmaurice and John Turney appeared by counsel and filed a motion to dismiss the petition for six reasons specified, viz.: 1st, The court had no jurisdiction of the matter; 2nd, The petition was defective and conferred no jurisdiction; 3rd, The notice served on the respective landowners was not as required by law; 4th, The railroad company was a foreign corporation, a non-resident, and could be served only by four weeks' publication; 5th, That at the preceding August term of the court the plaintiff had presented a similar petition for the same purpose, in pursuance of which commissioners had been appointed who viewed the premises and filed their report to the November term, assessing damages, and that upon the coming in of the report the plaintiff appeared and dismissed this suit because he was not willing to pay the damages awarded by the commissioners, and after dismissing that suit filed this petition which is substantially the same as the former, for the purpose of harassing defendants; 6th, That plaintiff is trifling with the court in dismissing and re-entering the same suit.

The appellant's abstract says: "On the same day the court took up said motion, heard argument of counsel and overruled the same, and heard evidence as to the legality of the proceedings, sufficiency of the petition and notice as well as argument of counsel and took the same under advisement until December 7, 1904." Then on December 7th the record says the court found for the petitioner, appointed commissioners, etc. At the next February term the commissioners made their report, marking out the proposed road twenty feet wide, and assessing the damages, awarding to John Fitzmaurice $57, to the railroad company $41 and to John Turney $350. On the coming in of that report defendant Turney filed objections to the

amount of damages awarded him, setting out in detail the particulars in which his land was damaged and asking a jury to assess the damages.    The court in accordance with that demand ordered a jury to be summoned to appear March 15, 1905, to assess Turney's damages.    But before the return of the *venire facias,* to-wit, on February 15th, Turney by his attorney by leave of court withdrew his objection to the amount of damages and filed a motion to quash the report of the commissioners and dismiss the proceedings; the ground of the motion being that the court had no jurisdiction to appoint this second set of commissioners, and they had no authority to act in the premises because of the former proceedings, begun at the August term, already mentioned.

The court overruled the motion, and on March 15th, a jury was empanelled to assess the damages; the jury assessed the damages at $350, whereupon the court rendered judgment in favor of Turney against plaintiff for $350 and costs up to the time of filing the objection, and a judgment against Turney for the costs after that date.    It was adjudged that the plaintiff pay into the county treasury for John Fitzmaurice $57.10, for the C. B. & Q. railroad company $41, and for John Turney $350, and that the private road be established as prayed, giving the landowners until May 1, 1905, to build fences and give possession. That judgment was rendered March 15th, and the record shows that plaintiff on March 17th paid to the county treasurer the several sums of money required by the judgment.    On March 17th, John Turney filed his affidavit for an appeal and his appeal bond, the appeal was allowed, and on March 28th the transcript was filed in the circuit court.    At the April term of the circuit court appellant Turney appeared and filed a motion to dismiss the proceedings, assigning nineteen grounds.    It is unnecessary to set out those

grounds in full, it is sufficient now to say that they are chiefly the same grounds set out in the similar motion filed in the county court with changes rung in the form of the statement. We will follow the course marked out in the brief for appellant and consider the grounds as appellant has therein considered them. The appellant's abstract shows that the motion to dismiss was heard and considered by the court and overruled, and in that connection the abstract says, "(See motion, ruling and exceptions in Bill of Exceptions)."

The bill of exceptions contains the motion in full and concerning the same, it says: "That afterwards on the same day and term the said motion being taken up and argued by counsel and considered by the court, was by the court overruled, and to which ruling of the court in overruling the said motion the defendant objector at the same time excepted and still excepts." That is all there is in the bill of exceptions about the motion; if any evidence was introduced in support of it, it does not appear.

When the cause came on for trial in the circuit court a jury was waived and the cause submitted to the court, and thereupon it was agreed by the parties in open court that the question of damages should be waived, with the understanding that in the event the court should find for the plaintiff the damages assessed by the commissioners should be taken as the amount due defendant.

The testimony on the part of the plaintiff was to the following effect:

The plaintiff's tract of two hundred and thirteen and two-thirds acres was originally a part of a larger tract owned by his father, who in 1902 executed deeds to his several children making partition of his land among them, conveying this two hundred and thirteen and two-thirds acres to the plaintiff. There is no

public road through or touching plaintiff's land. The route proposed is the shortest, most direct and accessible course from plaintiff's land to the nearest public road. The public road which plaintiff seeks to reach runs from Mound City to Forest City. The latter is the nearest town to plaintiff, about one and a half miles distant, Mound City about ten miles. The length of the proposed road is about half a mile, more than half of which is on the land of John Fitzmaurice.

On the part of defendant the evidence tended to show that the plaintiff had another way which he had the right to travel leading from his land north to this same public road. The evidence of the defendant on this point was contained in certain alleged deeds from Patrick Fitzmaurice to his children and consisted in a reservation of a strip one rod wide off the east end of the land conveyed, "for the use of all grantor's children and all their grantees and assigns." The character of that evidence will be stated more particularly when its effect is discussed in the opinion. To rebut that evidence the plaintiff introduced testimony tending to show that that route was not only longer but also more inconvenient, involving among other hindrances the crossing of a creek, etc.

According to the plaintiff's testimony, if he was going from his land to Forest City by way of that route he would travel three-quarters of a mile farther than by the proposed road; according to the defendant's testimony, it would be only a half mile farther and that it was as convenient as the proposed road. The testimony for the plaintiff also tended to show that the road proposed had been in common use and he had travelled over it for eighteen or twenty years; one witness thought it had been so used for forty-five years; but it was closed when the plaintiff began this suit. A good deal of defendant's evidence was directed to the question of the damages the proposed road would

be to his land, cutting his best land in two; but as the amount of damages was covered by the agreement it is not necessary to set out that evidence here; it is sufficient to say that there was evidence to the effect that dividing the defendant's farm by the proposed private road was a considerable damage to the land and a serious inconvenience to the defendant. There was evidence for the plaintiff to the effect that neither the damage to the land nor the inconvenience to the defendant was as great as he feared it would be.

Attached to appellant's abstract is a diagram or plat showing the lay of the lands mentioned and the alleged private road reserved in the Patrick Fitzmaurice deeds and also the proposed private road. Reference to that diagram will assist us in understanding the situation.

The court rendered the following findings and judgment to-wit:

"Now here at this time this matter coming on for hearing the question of damages being waived and all parties being present in court, Timothy Fitzmaurice in person and by his attorneys, G. W. Murphy and Chas. Booher, and John Turney in person and by his attorneys, T. C. Dungan, and H. T. Alkire and J. W. Stokes, and the evidence being fully presented and arguments of counsel heard, the court finds that no

public road passes through or touches the lands of the petitioner, Timothy Fitzmaurice, described in the petition in this case and that the private road asked to be established in said petition connects the said lands of the petitioner herein with the public road at a convenient point in Holt county, Missouri, and that said road is a way of necessity within the meaning of the law; and it further appeared to the court that all the proceedings had in this case in the county court of Holt county, Missouri, and all things allowed and found by the commissioners appointed by said county court have been and are legal and regular, that three disinterested freeholders of the county, A. H. Bailey, I. M. Minton and W. M. Terry, were duly appointed and qualified as commissioners as provided by law under the order of the county court in this cause, that they proceeded to view and did view the premises described in said petition and caused a road of the width of twenty feet to be marked out along the line described in and including the strip of ground as set out, in the said petition, which road would cause as little injury as practicable to other persons, giving the beginning, course, ending, width and distance of said road, and made report thereof to the county court at its next term, said report also giving the cost of fences, it being necessary to erect fences, the lands being enclosed, with the kind of fences required, and also all of the items of damage to said John Turney, the report also giving all of said items and facts of description, costs and damages regarding the other lands sought to be condemned, belonging to John Fitzmaurice and the C. B. & Q. R. R. Co.; the court also finds that ten days' notice was given as required by law, of the day on which and the term of the court to which said petition was to be presented, which notice was accompanied with a copy of the petition and served upon each of the defendants, to-wit, John Turney,

John Fitzmaurice and the said C. B. & Q. R. R. Co.—
it is therefore ordered and adjudged that all proceed-
ings had in the county court in this behalf are hereby
confirmed and approved.

"It is further ordered and adjudged that the said
way be and the same is hereby established according
to the report of the commissioners in this cause, to-
wit:    And that John Turney have and recover from
the petitioner herein the sum of $350 and that the C.
B. & Q. R. R. Co. have and recover the sum of $41
and that John Fitzmaurice have and recover the sum
of $57; which said several sums are for the damages
heretofore adjudged by the county court to be paid by
Timothy P. Fitzmaurice to said parties as damages
to the lands and for fencing and other purposes as ad-
judged by said county court, and it is further ordered
and adjudged that the said petitioner pay said sums
of money to the county treasurer of Holt county for
the use of said defendants as herein adjudged, and
that the petitioner pay all necessary costs in this cause
except the costs arising from the trial had in the county
court on the question of damages to lands of John Tur-
ney and objections made by him in that regard, and
except all costs accruing in this appeal and incident
thereto, which said costs are each and all adjudged
against the said John Turney.    It is further ordered
and adjudged that the said John Turney, John Fitz-
maurice and the C. B. & Q. R. R. Co., shall each sur-
render possession of said right of way within thirty
days from this date and that each of them have until
the expiration of said time to erect fences along the
line of said way and otherwise open up said road as
herein granted, and for said railroad company to put
in proper crossings, grading and otherwise comply
with this order.    It is ordered and adjudged that the
clerk of this court certify a copy of this judgment to
the county court and to the objector, John Turney."

Defendant Turney filed motions for a new trial and in arrest, which were overruled and this appeal was taken.

I. Appellant contends that the county court had no jurisdiction of the cause and hence the circuit court could acquire none by appeal. This contention is based on two propositions, viz.: 1st, that the petition does not state facts authorizing the court to exercise jurisdiction; second, the notice was not sufficient.

(a). The first objection made to the petition is that it shows on the face that the proposed road was not a private road of necessity because the plaintiff already had a private way reserved in the deeds from Patrick Fitzmaurice to his children. That proposition is based on the statement in the petition "that there is a strip one rod wide across the north side of the east half of the aforementioned tract belonging to John Fitzmaurice which has been reserved by the grantors of said land [Patrick Fitzmaurice and his wife] to John Fitzmaurice, which reservation is for a roadway for the use of this petitioner and others." The southwest quarter of the southwest quarter of section 19, township 60, range 38, forty acres, is the land of John Fitzmaurice lying east of and contiguous to the plaintiff's land; east of that forty is the land of Turney. The proposed road begins at the northwest corner of this forty-acre tract and runs east along its northern line and continues on east through the land of Turney. Assuming that there is a private way reserved as stated, it does not begin until, going east from plaintiff's land, you reach the east half of the north line of the tract, and it ends at the point where it touches defendant Turney's land. It is of no use to plaintiff unless he can have it extended west to his own land and east through the land of appellant. There is nothing, therefore, in that statement

214 Sup.—40

that makes against the other statement in the petition that the proposed road "is a private way of necessity." The petition complies with the requirement of the statute and of the Constitution on this point as interpreted in Colville v. Judy, 73 Mo. 651.

Under this head appellant in his brief also says "that it appears from the statements and admission that a part of defendant Turney's land formerly belonged to Patrick Fitzmaurice and that he sold the same to Turney, reserving a right of way across it to this same public road, but that the deed misdescribed the location of the reservation," etc. There is nothing to that effect in the petition and of course the appellant cannot predicate what he calls a defect in the petition, fatal to the jurisdiction of the court, upon what he considers is shown by the evidence. But to save returning to that point again we will here say that there is nothing to that effect in the evidence. Defendant attempted to introduce oral evidence to show that there was such a deed and that it contained such a reservation, but on objection the evidence was ruled out and properly so. The contents of a deed not shown to be lost or out of reach of the party cannot be proven by oral evidence.

(b). As to the notice. It is not claimed by appellant that the notice to him or to John Fitzmaurice was not sufficient, but that the notice to the railroad company was not sufficient. Passing over the question of whether the appellant, who has had the full benefit of litigation of every point of merit in his case, can be heard to complain that another landowner whose land is to be taken has not had legal notice, we come to the question of the sufficiency of the notice to the railroad company. Section 9460, Revised Statutes 1899, Ann. Stat., p. 4345, provides that the petitioner, at least ten days before presenting his petition to the county court, shall cause a copy of it and a notice of

the day on which it will be presented to be served on the owner or owners of the land through which it is proposed to pass; "but if the owner does not reside in the county notice shall be given by publication thereof in any newspaper published in the county, for four weeks prior to presentation to the county court." The appellant contends that the railroad company being a foreign corporation is a non-resident of the county, and could be served only by publication. But the fact is the railroad company had a railroad running through the county and had a depot, a place of business there, and an agent or officer in charge of the depot, and the sheriff served the notice on that agent and gave him a copy of the petition. This service was in accordance with the requirements of section 570, Revised Statutes 1899, Ann. Stat., p. 597. We hold that that service was sufficient. It has several times been held in this State that a railroad company "is a resident of the county through which its line of road passes, and in which it has an agent upon whom process can be served, and where suits are authorized to be commenced." [Slavens v. Railroad, 51 Mo. 308; Harding v. Railroad, 80 Mo. 659; Crutsinger v. Railroad, 82 Mo. 64.]

In each of those cases the defendant was a railroad company, sued in a justice's court, summons served on its station agent in the county, judgment against defendant and appeal taken, but the appeal was not taken within ten days allowed by statute to a resident of the county though it was taken within the twenty days allowed to one who was not a resident of the county. The court held that the defendant was, in contemplation of law, a resident of the county. In one of those cases the defendant was a foreign corporation and in each of the two others, though it was a domestic corporation, it had its chief office and place of business in another county. Our St. Louis Court of Appeals applied the same rule in a case where the

defendant was a foreign manufacturing corporation. [Young v. Niles & Scott Co., 122 Mo. App. 392.] The principles announced in those cases and the reasons on which they were founded apply to the case at bar. We hold that in contemplation of section 9460, for the purpose of serving the notice therein required, the railroad company operating its railroad in Holt county, having a place of business, to-wit, a depot or station house there and an agent in charge of it, was a resident of that county.

II.    Appellant's next point is that the plaintiff cannot maintain this proceeding because at a former term of the county court he presented a petition for the same proposed road, commissioners were appointed who made their report to which no objections were filed, but the plaintiff, deeming the damages awarded excessive, before any final judgment was rendered, dismissed that suit and began this one.

Whether or not the plaintiff by such alleged former proceeding would have been precluded from prosecuting this suit is not a question in this case, because there is no evidence in the record that there ever was any such former proceeding. The record of such a proceeding, if there was such, would not be a part of the record proper in this case and it could only come in here by being offered in evidence at the trial and embodied in the bill of exceptions. An appeal from a final judgment of the county court brings up only the record proper of that court; the trial in the circuit court is *de novo*. The record of the county court in this case shows that a motion to dismiss this proceeding was filed by defendant, heard by the court and overruled. No bill of exceptions can be taken in the county court, therefore we do not know upon what the motion was founded or what evidence if any was introduced to support it. The only thing that we know is what the record proper shows, to-wit, that there was

a motion to dismiss filed, argued, heard and overruled. But when the case came to the circuit court the defendant filed a motion to dismiss; that motion is properly preserved in the bill of exceptions, and the ruling of the court on the motion is properly shown in the record proper of the circuit court.

There is nothing difficult about this question; suppose defendant should be sued in an ordinary action of debt and in his answer should say in effect the plaintiff has no cause of action against defendant because at the last term of this court he sued defendant on this same alleged cause of action and, upon issue joined and trial had on the merits, the court rendered final judgment against him. That would unquestionably be a good plea in bar, but if issue was joined and defendant went to trial and failed to offer in evidence the record in the former suit his plea would avail him nothing. Though the former suit had been in the same court yet it was not a part of the record in that case and could be brought to the notice of the court only by being introduced in evidence.

Appellant's bill of exceptions sets out the motion in full, as it should do, and it shows that one of the grounds alleged was this former proceeding and the dismissal of it after the commissioners had made their report. But the bill of exceptions does not show that the appellant introduced the record of the county in the alleged former proceeding in evidence or any evidence at all in support of the motion. The record proper of the circuit court says: ''And afterwards at the same term and on the same day the court having heard and considered defendant's motion to dismiss proceedings, overruled the same and defendant excepted.'' Turning to the bill of exceptions on this point we find this: ''Comes John Turney by his attorneys . . . and filed defendant's motion to dismiss the petition and proceedings in said matter which, omit-

ting the caption, is as follows: ''Now comes,'' etc. (setting out the motion and specifying nineteen causes in support of it); after which, and in reference to which, the bill of exception says: ''That afterwards on the same day and term the said motion being taken up and argued by counsel and considered by the court was by the court overruled, and to which ruling of the court in overruling said motion the defendant, objector, at the time excepted and still excepts.'' That is all there is in the bill of exceptions on the subject. It does not show that there was any evidence at all offered in support of the motion. In appellant's abstract and brief there is what is claimed to be a transcript of the record of the county court in the alleged former proceedings, but there is nothing to show that it was ever shown to the trial court.

III. Appellant's next point is that the county court had no jurisdiction to render final judgment establishing the road until the damages assessed were all paid into the county treasury for the landowners. The record of the county court shows that on the filing of objections by appellant to the amount of damages awarded him and his demand for a jury to assess the same, the court ordered a jury and thereupon the jury came and assessed the damages, then the court entered judgment against the plaintiff in favor of the two defendants, who had not objected to the damages awarded them respectively by the commissioners, for the respective amounts of that award and against the plaintiff in favor of appellant for the amount of damages awarded him by the jury, and plaintiff was ordered to pay those several amounts to the county treasurer for the defendants respectively and it was adjudged that the private road be established, giving defendant until May 1st to build fences and give possession. That was on March 15th, and the record also shows that on March 17th, the plaintiff paid the several sums

into the county treasury as ordered. The judgment against the plaintiff for the several amounts awarded the several defendants and the order to him to pay the same into the county treasury and establishing the road is all one judgment, and of course that part of the judgment establishing the road could not be enforced until the preceding part, the payment of the money into the county treasury, was complied with. The judgment in this form is exactly as prescribed in section 9462, Revised Statutes 1899, Ann. Stat. 4345.

IV. It is said that the judgment is erroneous because it does not specify and describe the private right of way sought to be established, either specifically, or by reference to the petition or the report of the commissioners. The petition describes exactly by metes and bounds the proposed road, specifying the part that is to go over the land of each defendant. In his abstract appellant abbreviates the report of the commissioners (and properly so) saying that they filed their report of assessment of damages and marking out said private road twenty feet wide over the lands of said John Fitzmaurice, John Turney and the C. B. & Q. R. R. Co. as described, over their said described lands, and allowing John Fitzmaurice damages, etc., setting out the damages allowed each.

The decree of the court recites as a finding, that the commissioners "proceeded to view and did view the premises described in said petition and caused a road of the width of twenty feet to be marked out along the line described in and including the strip of ground as set out in the petition," etc. Thus we see that the report of the commissioners described the road as described in the petition, the court finds that to be the fact, and then the court in its decree says: "It is further ordered and adjudged that the said way be and the same is hereby established according to the report of the commissioners in this cause, to-wit."

There the clerk ought to have copied the description into the decree, but he failed to do so. But the failure is not fatal because the decree makes specific reference to the petition and the report, both of which are on file, and are parts of the record in the case and can be referred to for the specification. It is not essential to the validity of the decree that this omission be supplied, but inasmuch as both the petition and the report are loose papers and liable to be misplaced the circuit court on motion of either party ought to have a corrected entry *nunc pro tunc* made supplying this omission, there being sufficient in the record to authorize such entry.

V. It is contended that the circuit court had no jurisdiction of the case because neither the railroad company nor John Fitzmaurice appealed and that there was no record or other evidence that the damages awarded then had been paid. If John Fitzmaurice and the railroad company were both satisfied with the judgment there was no occasion for them to appeal, in fact they could not with truth make the affidavit for an appeal, nor can the appellant nullify the whole proceeding by taking an appeal. As to the payment to them of the damages assessed, this appellant is not concerned, that is their affair, but the record proper of the county court shows that those amounts were paid into the county treasury.

VI. Lastly it is insisted that the proposed road is not a road of necessity but of convenience only. That point presents a question of fact only, and the record shows that there was evidence pro and con and the court after hearing all the evidence found that it was a road of necessity.

There was an effort on the part of appellant to show that there was a road running north from plaintiff's land to the same public road that he seeks to reach

by this proposed road, and which though longer was available to him and reduced the proposed road to one of convenience, only, not one of necessity. Appellant's chief evidence on this point was claimed to be in certain deeds said to have been executed by the father of plaintiff to his children. The deed to the plaintiff was introduced in evidence containing this clause: "Grantors also reserve a roadway across the eastern end of the north half of the above-described land, one rod wide, for the use of all grantor's children and all their grantees and assigns." That was the only one of the deeds in evidence. In a colloquy between counsel it was admitted that there was a reservation of the same kind in all the deeds except one or two. In one of John's there was no reservation; that the father afterwards bought back the land deeded to Edward and deeded it to John without any reservation. It was admitted that there was a deed to John conveying, besides other land, twenty acres off of the east side of the southwest quarter of the southwest quarter of section 19, "except a strip one rod wide off the north end thereof for the use of all grantor's children and all their grantees for a roadway forever." Reference to the diagram will show that the strip there reserved is not a part of the alleged road leading from plaintiff's land north to the public road, but is a part of the now proposed road, the effect of which we have already above in paragraph one considered. The evidence therefore failed to show that the plaintiff had a right reserved by his father's deeds reaching from his land north to the public road, but there was oral evidence tending to show that he had been in the habit of using that strip as a way out from his land; but on his part the evidence tended to show that it was three-quarters of a mile longer and was encumbered with impediments. We think the court

was justified in finding that the proposed road was one of necessity.

We find no error in the record. The judgment is affirmed.

All concur.